

FILED
10/7/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
KP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOUIS CAPRIOTTI | No. 21 CR 16<br><br>Judge Ronald A. Guzman |

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant LOUIS CAPRIOTTI, and his attorney, JACK CORFMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with transmission of a threat in interstate commerce, in violation of Title 18, United States Code, Section 875(c).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with knowingly transmitting in

interstate commerce a communication containing a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about December 29, 2020, at Chicago Heights, in the Northern District of Illinois, Eastern Division, LOUIS CAPRIOTTI, knowingly transmitted in interstate commerce a communication containing a threat to injure the person of another, with the purpose of issuing a true threat and knowing that the communication would be understood as a true threat, in violation of Title 18, United States Code, Section 875(c).

Specifically, on or about December 29, 2020, CAPRIOTTI, who was in the area of Chicago Heights, used his cellular phone to leave a voicemail message on the voicemail system of Member A, a member of the United States Congress. This cellular phone call was transmitted from Illinois to another state. In that voicemail message, CAPRIOTTI included derogatory remarks concerning the race, religion, political affiliation, and physical appearance of certain individuals. CAPRIOTTI identified Member D [handwritten: A /JPD JC LC] by name and stated, "make sure [Member D] [handwritten: A/JPD,JC LC] hears this message with [their] own two ears." CAPRIOTTI related that if certain individuals "think that Joe

2

Biden is going to put his hand on the Bible and walk into that fucking White House on January 20th, they're sadly fucking mistaken." CAPRIOTTI identified himself as a "nine-year Marine, active duty" and stated, "[w]e will surround the motherfucking White House and we will kill any motherfucking Democrat that steps on the motherfucking lawn." At the end of the voicemail, CAPRIOTTI identified the first and last name of a former governor (Individual A) from Member A's state and stated that he would "like to put one right in [Individual A's] fucking dome." CAPRIOTTI left the voicemail message with the purpose of issuing a true threat and knowing that the communication would be understood as a true threat. CAPRIOTTI never served in the U.S. Marine Corps or any branch of the U.S. military.

CAPRIOTTI left additional threatening voicemail messages on the voicemail systems of other members of the United States Congress in November and December 2020. For example, on November 18, 2020, CAPRIOTTI left a voicemail message on the voicemail system of Member B. In the message, CAPRIOTTI identified Member B by name and stated that he was "not from your state, but I am a nine-year Marine, active duty." CAPRIOTTI continued that he had "killed" several "terrorists" in prior wars and that he "will continue to kill them because that's what I am trained to do." CAPRIOTTI also stated "in the next couple weeks, some big news is about to go down" and that certain individuals "are going to be astonished of what's going to be revealed."

3

On December 4, 2020, CAPRIOTTI left a voicemail message on the voicemail system of Member C. In the message, CAPRIOTTI identified Member C by name and instructed the listener to "make sure [Member C] hears this message with [their] own fucking ears." CAPRIOTTI then related that he was "a nine-year Marine, active fucking duty." CAPRIOTTI stated that Member C was "mistaken" if Member C believed that "Joe Biden" and "Kamala Harris" were "going to walk into that fucking White House." CAPRIOTTI identified Member C as a "terrorist" and described Member C as "gun grabbing." CAPRIOTTI ended the message by stating, "may [Member C] choke in hell."

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

4

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 12, pursuant to Guideline § 2A6.1(a)(1).

5

    ii.  The offense level is increased by 2 levels pursuant to Guideline §2A6.1(b)(2)(A), because the offense involved more than two threats.

    iii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

  c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 4 and defendant's criminal history category is III:

    i.  On or about March 16, 2005, defendant was convicted of domestic battery in the Circuit Court of Cook County and sentenced to one year of conditional discharge. On August 2, 2007, defendant was found guilty of a violating the terms of the conditional discharge and was resentenced to 5 days in Cook County Department of Corrections. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this sentence.

6

        ii.      On or about August 2, 2007, defendant was convicted of disorderly conduct in the Circuit Court of Cook County and sentenced to 5 days' incarceration. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this sentence.

        iii.      On or about November 20, 2008, defendant was convicted of a violation of an order of protection and sentenced to 6 months' conditional discharge in the Circuit Court of Cook County. On March 17, 2009, defendant was found guilty of a violating the terms of the conditional discharge and was resentenced to 75 days in Cook County Department of Corrections. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this sentence.

        iv.      On or about November 21, 2008, defendant was found guilty of driving while uninsured and sentenced to 1 year supervision in the Circuit Court of Cook County. Pursuant to Guideline §§ 4A1.2(c) and (e)(3), defendant receives no criminal history points for this sentence.

        v.      On or about March 17, 2009, defendant was convicted of domestic battery and sentenced to 75 days' imprisonment and 2 years' probation in the Circuit Court of Cook County. On or about December 22, 2010, defendant was found guilty of a violating the terms of the probation and was resentenced to time served for 82 days in Cook County Department of Corrections. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this sentence.

    vi.  On or about November 8, 2010, defendant was convicted of reckless conduct and sentenced to 1 year of conditional discharge in the Circuit Court of Cook County. Pursuant to Guideline § 4A1.2(e)(3), defendant receives no criminal history points for this sentence.

    vii.  On or about February 15, 2012, defendant was convicted of violation of an order of protection and sentenced to 1 year conditional discharge. Pursuant to Guideline § 4A1.1(c) defendant receives one criminal history point for this sentence.

    viii.  On or about April 8, 2013, defendant was found guilty of driving while uninsured and sentenced to supervision. Pursuant to Guideline § 4A1.2(c), defendant receives no criminal history points for this sentence.

    ix.  On or about March 19, 2014, defendant was convicted of a violation of an order of protection and sentenced to 18 months' probation. On April 29, 2014, defendant was found guilty of a violating the terms of the probation and was resentenced to time served for 30 days in Cook County Department of Corrections. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

    x.  On or about August 20, 2014, defendant was convicted of violation of an order of protection and sentenced to 2 years' conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

xi. On or about October 13, 2016, defendant was convicted of telephone harassment in the Circuit Court of Cook County and sentenced to 24 months' probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 12 which, when combined with the anticipated criminal history category of III results in an anticipated advisory sentencing guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full

restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 16.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

13

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

  20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

  21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

  22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: September 24, 2021

_____
JOHN R. LAUSCH, JR.
United States Attorney

JAMES DURKIN   Digitally signed by JAMES DURKIN
               Date: 2021.10.05 23:07:30 -05'00'
_____
JAMES P. DURKIN
Assistant U.S. Attorney

_____
LOUIS CAPRIOTTI
Defendant

_____
JACK CORFMAN
Attorney for Defendant

17